IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Phase Four Industries, Inc., | NO. 04-CV-04801 JW |
| Plaintiff, | **ORDER FOLLOWING CLAIMS CONSTRUCTION HEARING; SETTING CASE MANAGEMENT CONFERENCE** |
| v. | |
| Marathon Coach, Inc. | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Phase Four Industries, Inc. ("Phase Four") brings this action seeking a declaratory judgment that it does not infringe Defendant's Marathon Coach, Inc.'s ("Marathon") U.S. Patent No. 6,607,009 ("the '009 Patent"). Jurisdiction is proper pursuant to 28 U.S.C. §1338(a), and venue is proper pursuant to 28 U.S.C. §1391(b)(1). The Court conducted a claims construction hearing on February 22, 2006. This Order sets forth the Court's construction of the terms and phrases at issue.

## II. BACKGROUND

### A. Procedural History

Phase Four and Marathon are two companies in the recreational vehicle business. Phase Four is a California corporation engaged in the business of developing and manufacturing components, specifically waste disposal systems for recreational vehicles ("Rvs"). Marathon is an Oregon corporation which manufactures custom, high-end RVs from the chassis up. Marathon's

1 RVs incorporate components and systems manufactured by Marathon and by third party companies 2 like Phase Four.

3 In 2003, Marathon was granted U.S. Patent No. 6,607,009, entitled "Sewage Systems for 4 Vehicles."  Afterward, Marathon came to learn that Phase Four was marketing an extendable sewer 5 hose product called "Waste Master."  In October of 2004, Marathon wrote a "cease and desist" letter 6 to Monaco, Inc., one of Phase Four's major customers claiming that the Phase Four's "Waste Master" 7 infringed the '009 Patent.  Anticipating that Marathon would sue it for patent infringement, Phase 8 Four filed this preemptive action against Marathon by seeking a declaratory judgment that it does 9 not infringe the '009 Patent.

10 On November 19, 2004, Marathon filed a patent infringement action against Phase Four and 11 Monaco in the District of Oregon.  The case was transferred to the Northen District of California. 12 (See C 05-00748-JW, Docket Item No. 1.)  A more comprehensive procedure history of these 13 consolidated actions may be found in the Court's Order Granting Motion to Consolidate Cases.  (See 14 Id., Docket Item No. 26.)

15 On October 20, 2005, the Court granted Marathon's motion for partial summary judgment as 16 to the affirmative defenses of invalidity based on priority of inventorship and derivation, and ordered 17 those particular Phase Four's affirmative defenses dismissed.  (See Order Granting Marathon's 18 Partial Summary Judgment Dismissing Affirmative Defenses, hereafter, "Order," Docket Item No. 19 65.)

20 **B.     The Patented Invention**

21 The '009 Patent contains four independent claims and associated dependent claims.  Each 22 independent claim discloses a liquid water materials system for a vehicle comprising a storage 23 container for liquid waste materials, and a tubular waste disposal hose which is moveable from a 24 first position to a second position in response to air pressure.

25 An embodiment of the invention is a mechanism for extending and retracting a pre-26 connected sewage hose from a housing attached to the RV.  In the embodiment, a user presses a

1  button which causes air pressure to be exerted on the hose. A trap door opens and the hose extends
2  from the RV plumbing bay to the dump site. The user uncaps the hose and connects it to the dump.
3  When the user is ready to move the RV, the user releases the hose from the dump, caps the hose, and
4  presses another button which uses air pressure to retract the hose into its bay and closes the trap door
5  behind it. The parties submit that this mechanism makes RV owners' experience of dumping waste
6  from their vehicles more convenient and pleasant than the conventional way. (Order at 11.)

### III.  STANDARDS

Claim construction is purely a matter of law, to be decided exclusively by the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 387 (1996). Claims are construed from the perspective of a person of ordinary skill in the art at the time of the invention. Markman v. Westview Instruments, Inc., 52 F.3d 967, 986 (Fed. Cir. 1995). To determine the meaning of the claim terms, the Court initially must look to intrinsic evidence, that is, the claims, the specification, and, if in evidence, the prosecution history. Autogiro v. United States, 384 F.2d 391 (Ct. Cl. 1967). The Court must look first to the words of the claims themselves. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). These words are to be given their ordinary and customary meaning unless it is clear from the specification and prosecution history that the inventor used the term with a different meaning. Id. The claims should be interpreted consistently with the specification. See Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

Where intrinsic evidence alone resolves any ambiguity in a disputed claim term, it is improper to rely on evidence which is external to the patent and file history. Vitronics, 90 F.3d at 1583, 1585. However, extrinsic evidence may be considered in the rare instances where the intrinsic evidence is insufficient to enable the court to construe disputed claim terms. Id. at 1585. Common sources of extrinsic evidence include expert testimony, inventor testimony, dictionaries, and technical treatises and articles. Id. at 1584.

1   The Federal Circuit has consistently employed the caveat, "if possible," to their instruction
2 that claims should be construed to sustain their validity. Rhine v. Casio, Inc., 183 F.3d 1342, 1345,
3 (Fed. Cir. 1999) (citing Whittaker Corp. v. UNR Indus., Inc., 911 F.2d 709, 712 (Fed. Cir. 1990)).
4 At the same time, the Federal Circuit has admonished against judicial rewriting of claims to preserve
5 validity. Rhine, 183 F.3d at 1354 (citing Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792,
6 799 & n. 6 (Fed. Cir. 1990)).

## IV. DISCUSSION

The parties have asked the Court to construe a number of words and phrases used in the claims of the '009 Patent. In some instances the word or phrase appears in multiple claims. (See Docket Item No. 76.) Unless otherwise indicated, a construction given to a word or phrase applies to each claim in which it appears.

In addition, to the constuction of words and phrases, the chart contains requests by one or both parties to rule on the validity of a claim. It is the practice of the Court to decline to construe a word or phrase if it determines, pursuant to the principles of claim construction, that a construction cannot be given. When the declination to construe a word or phrase renders a claim arguably indefinite, the Court will identify that issue and leave it to the parties to bring a motion directed to that issue. Otherwise, all matters pertaining to validity are left to proceeding subsequent to claim construction.

**A.     The '009 Patent - Claim 1**

Claim 1of the '009 Patent provides:[1]

> A liquid water materials system for a vehicle comprising:
>     (a) a storage container for **liquid waste materials**;
>     (b) an **elongate tubular member** through which said waste materials **may flow**, wherein said elongate tubular member has an end;
>     (c) said end of said elongate tubular member is **movable** from a **first position** to a **second position**, wherein said end when in said second position is further distant from said vehicle than said end in said first position; and

---

[1] Unless otherwise indicated, all bold typeface is added by the Court to emphasize the words and phrases under consideration.

United States District Court
For the Northern District of California

    (d) wherein **said movement** of said end is in response to **air pressure** exerted within said tubular member.

**1.  Relationship between the Structural Elements of Claim 1**

  Claim 1 discloses a liquid water materials system comprising two elements: "a storage container" and an "elongate tubular member." The claim does not disclose any structural relationship or connection between the storage container and the elongate tubular member.

  An essential element of an apparatus claim is disclosure of a structural cooperative relationship among the elements of the claim. See In re Collier, 397 F.2d 1003 (C.C.P.A. 1968). Therefore, a claim which does not recite the structural relationship between elements is incomplete and therefore indefinite under 35 U.S.C. 112. Id. at 1005.

  Although not expressly stated, an inference of a connection between the elements of Claim 1 of the '009 Patent can be derived from the following language of the "elongate tubular" element: "an elongate tubular member **through which said waste material can flow** . . ." ('009 Patent, Col. 4:61-62.) Those skilled in the art could infer a connection between the storage container and the elongate tubular member in order for the "flow" limitation to be met. At this time, the Court declines to address whether or not an inference of structural relationship is sufficient to withstand an invalidity challenge.

  Further, the written description discloses an embodiment in which a black tank and grey tank are "interconnected" to pipes. Figure 1 of the drawings also show a waste hose interconnected to the pipes:

> The black tank 10 and the grey tank 12 are interconnected by pipes 14 and 16 to a vent pipe 18. * * * Using an existing pressurized air source reduces the expense of an automated extension and retraction of the waste hose 42.

('009 Patent, Col. 2:49-51; Col. 3:4-6.) Presuming that the "waste hose" practices the "elongate tubular member" limitation of the second element, the "pipes" described in the embodiment are not claimed as elements. At this time, the Court declines to address whether or not the pipes are essential elements of Claim 1.

Although the Court proceeds to construe the words and phrases used in the elements of Claim 1, the Court finds that the lack of a structural relationship between the elements renders Claim 1 and its dependent claims arguably indefinite. The Court invites the parties to address the cited apparent indefinite of Claim 1 in appropriate motions.

**2.     "liquid waste materials"**

The parties dispute the proper construction of the phrase "liquid waste materials." Claim 1 uses two different phrases to describe the materials being handled by the claimed apparatus. The Preamble uses the phrase, "a liquid **water materials** system."[2] The claim uses the phrase "liquid **waste materials**."

Generally, a preamble does not limit the claims. <u>Allen Eng'g Corp. v. Bartell Indus., Inc.</u>, 299 F.3d 1336, (Fed. Cir. 2002) (citing <u>DeGeorge v. Bernier</u>, 768 F.2d 1318, 1322 n. 3 (Fed. Cir. 1985)). If a preamble is used as an antecedent, namely, to define the apparatus which is referred to in the elements of the claimed invention, it is limiting. <u>Allen Eng'g Corp.</u>, 299 F.3d at 1346 (citing <u>Bell Comm. Research, Inc. v. Vitalink Comm. Corp.</u>, 55 F.3d 615, 620 (Fed. Cir. 1995)). In addition, "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." <u>Catalina Marketing International Inc. v. Coolsavings.com, Inc.</u>, 289 F.3d 801, 808 (Fed. Cir. 2002) (citing <u>Bristol-Meyers Squibb Co. v. Ben Venue Labs., Inc.</u>, 246 F.3d 1368 (Fed. Cir. 2001)).

The Court finds that the Preamble to Claim 1 is not limiting because it is not used as an antecedent or to avoid prior art. Therefore, the Court declines to construe the phrase "liquid water materials system," since it adds no limitations to the elements of Claim 1.

In using the phrase, "liquid waste material," the patentee was acting as lexicographer and coined this term to describe the material being handled by the system. A patentee is free to act as his

---

[2] The phrase "liquid water materials" is also found in the Preamble of Claims 11, 21, and 30 of the '009 Patent.

6

or her own lexicographer. Acting as lexicographer, the patentee may either define a term used in a claim differently from its ordinary meaning or coin a new term. However, if the patentee chooses to act as his or her own lexicographer, the special definition must be clearly stated within the patent specification or file history. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). In this case, the '009 Patent's written description does not contain an express definition of the phrase. However, the related phrases "waste" and "waste water" are defined:

> Referring to FIG. 1, an exemplary **waste system** for a RV of the present invention may include a black tank 10 for holding toilet sewage and a grey tank 12 for holding other **waste water**, such as for example, the sink or the shower.

('009 Patent, Col. 2:44-47.)

In addition, the abstract of the invention may be used as a source for defining the phrases. Hill Rom Co. v. Kinetic Concepts, Inc. 209 F.3d 1337 (Fed. Cir. 2000.) The abstract of the '009 Patent provides: "The present invention relates to a sewage system for a vehicle." This same language is used in describing the background of the invention. (See '009 Patent Col. 1:5-6.)

The Court construes the phrase **"liquid waste materials"** as follows:

**"any waste material or mixture of waste materials which flows."**

**3.   "elongate tubular member"**

Claim 1 of the '009 Patent provides:

an **elongate tubular member**[3] through which said waste materials may flow.

The parties dispute the proper construction of the phrase "elongate tubular member." The Court gives this phrase its plain and ordinary meaning. "Elongate" is commonly understood to mean, "long and narrow." The detailed description uses the phrase "tubular member" as follows: "Further, the waste hose 42 may be any type of **tubular member** having any cross sectional profile(s) suitable to pass liquids through." ('009 Patent, Col. 3:63-65.)

The Court construes **"elongate tubular member"** as follows:
**"long narrow tube suitable to pass liquids."**

---

[3] This phrase is also found in Claims 9, 10, 11, 19, 21, and 30.

7

**4.     "may flow"**

Claim 1 of the '009 Patent provides:

> an elongate tubular member through which said waste materials **may flow**.

The parties dispute the proper construction of the phrase "may flow." The Court is requested by one to the parties to define the word "may" as "not required." The word "may" is also commonly used to mean "can" or "having the ability or power." The Court finds that in the context of the phrase at issue, one skilled in the art reading the patent would understand the word "may" in this latter context.

The Court construes the phrase "through which said waste materials **may flow**" as follows:

**"through which said waste materials can flow."**

**5.     "second position is further distant from said vehicle"**

Claim 1 provides as an element:

> said end of said elongate tubular member is movable from a first position to a **second position**, wherein said end when in **said second position is further distant from said vehicle** than said end in said first position. . .

The parties dispute the proper construction of the phrase "second position is further distant from said vehicle." The Court finds that one skilled in the art reading the claim and specification would understand this phrase to have an ordinary and customary meaning.

The Court construes the phrase: "**second position is further distant from said vehicle**" to mean:

**"When the end of the elongate tubular member is in the second position, it is further from the exterior of the vehicle than it is when it is in its first position."**

**6.     "said movement"**

Claim 1 claims as an element:

> wherein **said movement** of said end is in response to air pressure exerted within said tubular member.

The parties dispute the proper construction of the phrase "said movement." The phrase **"said movement"** refers to the antecedent movement of the end of the elongate tubular member. Therefore, the Court construes "**said movement**" as follows:

> **"the movement of the end of the elongate tubular member from a first position to a second position."**

### B.  The '009 Patent - Claim 3

Claim 3 of the '009 Patent provides:

> The system of claim 1 wherein **said first container** stores toilet sewage and **said second container** stores shower waste water.

The parties dispute whether it is proper for the Court to construe the phrases "said first container" and "said second container."  Claim 3 is a dependent claim from Claim 1.

When a dependent claim states as an invention elements using the word "the" or "said," it should be construed to refer back to elements already disclosed in the independent claim. Nautilus Group, Inc. v. Icon Health and Fitness, Inc., 308 F.Supp.2d 1198 (citing Process Control Corp. v. HydReclaim Corp., 190 F.3d 1350, 1356 (Fed.Cir.1999), cert. denied, 529 U.S. 1037 (2000)).  If the element is not recited in the independent claim, the dependent claim is arguably indefinite. Id.

Claim 3 of the '009 Patent suffers from lack of an antecedent in Claim 1 with respect to its recitals of a "first container" and a "second container."  Therefore, Claim 3 is arguably indefinite under 35 U.S.C. §112.  The Court invites the parties to address this arguable indefiniteness of Claim 3 in appropriate motions.

### C.  The '009 Patent - Claim 4

Claim 4 of the '009 Patent provides:

> The system of claim 1 wherein said storage container is vented to the **exterior** of said vehicle.

The parties dispute the proper construction of the word "exterior."  The Court finds that the word "exterior" has its plain and customary meaning and declines to construe the word any further.

1 **D.    The '009 Patent - Claim 7**

2    Claim 7 of the '009 Patent provides:

3    The system of claim 6 further comprising first **check valve** interconnected to the output of said air tank and a second check valve interconnected to the input of said air tank

4 **1.    "check valve"**

5    The parties dispute the proper construction of the phrase "check valve." The written description describes a check valve as follows:

   An intake check valve 44 is preferably a "one-way" valve that substantially only permits air flow in a single direction, as indicated by the arrows.

9 ('009 Patent, Col. 3:13-16.)  The court adopts the definition given in the written description.

10 Therefore, the Court construes the phrase **"check valve"** as follows:

11    **"a one way valve that substantially only permits flow in a single direction."**

12 **2.    "interconnected"**

13    Claim 7 of the '009 Patent provides:

14    The system of claim 6 further comprising first check valve interconnected to the output of said air tank and a second check valve **interconnected** to the input of said air tank

15    The parties dispute the proper construction of the phrase "interconnected." The word "interconnected" has a plain and ordinary meaning to one skilled in the art at the time of the invention, namely, "connected one to another."

18    The Court, therefore, construes the term **"interconnected"**[4] as follows:

19    **"connected one to another."**

20 **E.    The '009 Patent - Claim 8**

21    Claim 8 of the '009 Patent provides:

22    The system of claim 1 further comprising a **valve** that selectively causes said movement of said end.

24    The parties dispute the proper construction of the phrase "valve." The Court finds that the term "valve" has a ordinary and customary meaning and requires no further construction. The Court

---

[4] This word is found in claims 5, 7, 15, 17, 26, and 28.

28    10

notes, however, the lack of any recital of a structural relationship of the valve to the elements of the claim. As discussed in Section **A1** above, the Court invites the parties to address this matter in appropriate motions.

**F.      The '009 Patent - Claim 9**

Claim 9 of the '009 Patent provides:

> The system of claim 1 further comprising said end of said elongate tubular member being movable from said second position to said first position, wherein said end when in said second position is further distant from said vehicle than said end in said first position, wherein **said movement of said end is in response to air pressure**.

There is a dispute between the parties with respect to whether Claim 9 is redundant to Claim 1. See 35 U.S.C. §112. Both claims recite "movement of said end in response to air pressure." Claim 1 recites movement from a first position to a second position. Claim 9 recites movement from a second position to a first position. The Court finds that the elements of Claim 1 recites using air pressure to <u>extend</u> the tubular member. Claim 9 recites using air pressure to <u>retract</u> the tubular member. The Court finds that Claim 9 recites elements distinct from those cited in Claim 1.

**G.      The '009 Patent - Claim 10**

Claim 10 of the '009 Patent provides:

> The system of claim 1 further comprising said end of said elongate tubular member being movable from said second position to said first position, wherein said end when in said second position is further distant from said vehicle than said end in said first position, wherein said movement of said end is in response to air pressure.

The Court finds that Claim 10 is identical to Claim 9 and is invalid. The Court invites the parties to show cause, if any, why all claims based on Claim 10 should not be dismissed from the case.

**H.      The '009 Patent - Claim 11**

Claim 11 of the '009 Patent reads:

> A liquid water materials system for a vehicle comprising:
>     (a) a storage container for liquid waste materials;
>     (b) an elongate tubular member through which said waste materials may flow, wherein said elongate tubular member has an end;
>     (c) said end of said elongate tubular member is movable from a first position to a second position, wherein said end when in said second position is further distant from

11

said vehicle than said end in said first position; and
(d) wherein said movement of said end is **slidably engaged with said vehicle free from engagement** with **external ribs** of said tubular member.

**1.      "slidably engaged with said vehicle"**

The parties dispute the proper construction of the phrase "slidably engaged." In using the phrase "slidably engaged," the patentee combined two words which have ordinary and customary meanings. For two objects to be "engaged," means that they are "together" or "acting together." To be "slidable" means that the surface of an object is able to move along the plane of the surface of another object. The written description discloses a preferred embodiment of the system in which in response to air pressure the surface of a waste hose "slides" out of the vehicle:

> When the user desires to extend the waste hose 42, a check valve 50 is opened which permits air pressure to flow through the check valve 50 and into the drain pipe 30. A vent check valve 52 is preferably closed to primarily restrict the air flow through the drain pipe 30. Likewise, preferably the black waste valve 26 and the grey waste valve 28 are closed. Accordingly, substantially all the air flow will be acting upon the waste hose 42 which is preferably **slidably engaged** with the waste system. More preferably the waste hose 42 (or a majority thereof) is freely slidably engaged with the waste system over a majority of its extension. Moreover, the waste hose 42 may notably extend or move based upon other mechanisms in such a manner as to extend from the vehicle. The pressure exerted on the end portion of the waste hose 42, capped by a detachably engageable cover 54, will cause the waste hose 42 **to slide** outwardly from the recreational vehicle 20, as illustrated in FIG 2. In this manner, by simply opening the valve 50 the waste hose may be **slidably extended** in a manner that is free from the user having to manually pull or otherwise extend the waste hose.

('009 Patent, Col. 3:25-44.)

The Court construes **"slidably engaged with said vehicle"** to mean:

**"an elongate tubular member which is configured in a manner which allows it to slide along the surface of another structure in a waste system of a vehicle."**

**2.      "external ribs"**

The parties dispute the proper construction of the phrase "external ribs." Claim 11 discloses an elongate tubular member with "external ribs." In the context of this claim, one skilled in the art would understand "external" to mean "on the outside of." The ordinary and customary use of the word "rib" is a stiffening structure.

12

Figures 1 and 3 show a waste hose 42 with circumferential rings. The written description does not discuss these rings. However, the Court finds that one skilled in the art would understand these rings as embodiments of stiffening ribs of a waste hose.

The Court construes "**external ribs**" to mean:

**"stiffening structures on the outside of the elongate tubular member."**

**3.    "free from engagement"**

The parties dispute the proper construction of the phrase "free from engagement." Claim 11 discloses an elongate tubular member with external ribs which is "moveable." In this last element, Claim 11 discloses that "said movement" is "free from engagement" with the external ribs of "said tubular member." Although as pointed out in Section **H2** above, the written description does not disclose "ribs." It does, however, disclose movement of a waste hose:

> More preferably the waste hose 42 (or a majority thereof) is freely slidably engaged with the waste system over a majority of its extension. Moreover, the waste hose 42 may notably extend or move based upon other mechanisms in such a manner as to extend from the vehicle.

('009 Patent, Col. 33-38.) The Court gives this phrase its ordinary and customary meaning.

The Court construes "**free from engagement with external ribs**" as follows:

**"movement of the elongate tubular member without interference from its external ribs."**

## V.  CONCLUSION

The Court has completed claim construction of the terms presented by the parties. The parties shall meet and confer and submit supplemental or additional briefing addressing the terms and phrases that remain at issue given the constructions set forth above. The parties shall appear for a case management conference on **January 22, 2007 at 10 A.M.** Pursuant to the Civil Local Rules of the Court, the parties shall file a case management conference statement no later than ten (10) days before the date of the conference.

Dated:  December 19, 2006

JAMES WARE
United States District Judge

13

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alan Heimlich alanheimlich@heimlichlaw.com
Brenna Legaard brenna@chernofflaw.com
David Michael Zeff Zefflaw1@aol.com
Nicholas Heimlich nickheimlich@nickheimlichlaw.com
Susan D. Pitchford sdp@chernofflaw.com
William O. Geny bill@chernofflaw.com

**Dated:  December 19, 2006**                                   **Richard W. Wieking, Clerk**

                                                                     **By:   /s/ JW chambers**
                                                                             **Elizabeth Garcia**
                                                                             **Courtroom Deputy**

**United States District Court**
For the Northern District of California